IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN MORIARTY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 2777 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| DYSON, INC., an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maureen Moriarty has brought a six count amended complaint against her former employer, defendant Dyson, Inc., alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. (Counts I & II), defamation (Count III), false light invasion of privacy (Count IV), intentional infliction of emotional distress (Count V), and constructive discharge (Count VI). Defendant has moved to dismiss all six counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion is denied.

**FACTS**[1]

Plaintiff was employed by defendant as national account manager from August 2006 until November 2008. During that time she received numerous positive performance reviews, was responsible for approximately 38% of defendant's revenue growth from 2006 through 2007 and increased the value of the accounts she managed by 50%, or $50 million.

---

[1] For purposes of a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of plaintiff. Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 847 (7th Cir. 2008).

During her tenure plaintiff reported to her immediate supervisor, Jennifer Jones, until Jones' termination sometime in 2008. Plaintiff also reported to Jones' supervisor, Gordon Thom, who was defendant's president from September 2006 through August 2007.

On December 4, 2007,[2] plaintiff was told in her performance review that she was the "lead candidate" for a promotion to director of national accounts, with a corresponding increase in salary and responsibility. A few months later, in February or March 2008, she was told that position was on hold due to decreased sales against the planned 2008 budget.

Defendant had an "open concept" office in which numerous desks were situated in a large open space with no partitions. As a result, many of the employees became friends and attended social functions outside of business. Plaintiff, Jones, and Thom were such friends and attended "after business hours social functions" together.

Beginning in April 2008 and continuing throughout the remainder of plaintiff's employment, defendant's vice-president of finance, Maria Tryan informed Jones that plaintiff and Thom were engaged in a sexual relationship. Tyrian also told other employees of the alleged relationship.

On May 1, 2008, Thom was suspended. The following day Sara Wahlstrom, defendant's human resource director and Jennifer Hale, defendant's general counsel, met with plaintiff to discuss certain expenditures during a November 2007 business trip she had taken to New York with Thom and retail business strategist Jason Warner. Wahlstrom and Hale questioned plaintiff about certain expenditures made at a bar during the trip, whether Warner was present during the

---

[2]The complaint indicates 2008, but plaintiff had already terminated her employment by that time. Therefore, the court assumes that plaintiff intended 2007.

2

time plaintiff spent with Thom, and whether the expenses were made during the time that plaintiff was alone with Thom. During that meeting defendant insinuated that plaintiff was engaged in an inappropriate sexual relationship with Thom. Plaintiff denied having spent any time alone with Thom and insisted that their relationship was strictly professional.

In a separate but much shorter meeting, Warner was also questioned regarding expenditures on the trip and the amount of time plaintiff spent alone with Thom. Warner was not asked if he had spent time alone with Thom, nor was it insinuated that he had engaged in a sexual relationship with Thom.

Five days later, on May 6, 2008, defendant's CEO Martin McCourt requested an unplanned meeting with plaintiff. McCourt walked to plaintiff's desk, asked her to follow him and led her through the open office space in full view of her co-workers to a boardroom with windows open to the rest of the office. Plaintiff alleges that McCourt held the meeting in this room to embarrass her and encourage the rumors about her relationship with Thom. In the meeting, McCourt again questioned her about the November 2007 business trip and insinuated that he believed plaintiff to be in a sexual relationship with Thom. Plaintiff answered all questions and denied spending time alone with Thom, again insisting that their relationship was strictly professional. McCourt became angry and upset, which caused plaintiff to become embarrassed, frightened and anxious. After the meeting, McCourt told Jones that plaintiff had lied. McCourt did not question Warner about the business trip.

Thom's employment was terminated that same day. In May 2008, after Thom's termination, defendant informed several employees that plaintiff and Thom had been engaged in a sexual relationship and that the relationship was the cause for Thom's termination. Defendant,

through unidentified agents, then told plaintiff and her co-workers that they could not understand how plaintiff could "come to work after getting Thom fired for an affair with her."

One month earlier, in April 2008, Patrice Compernolle, vice president of field sales, told other employees that plaintiff was engaged in a sexual affair with Tom Stremleau, one of defendant's district managers. Compernolle asked Stremleau about his alleged affair with plaintiff and if he knew that plaintiff had been sleeping with Thom. Defendant continued to make statements that plaintiff was engaged in sexual affairs with both Stremleau and Thom.

On May 30, 2008, plaintiff, through counsel, reported to the company that she had been subjected to gender discrimination and sexual harassment that created a hostile work environment. Thereafter, defendant systematically excluded plaintiff from new assignments or projects relating to her employment. Tryan refused to meet with plaintiff and excluded her from meetings about plaintiff's accounts, making it difficult for plaintiff to perform her job requirements. Defendant had numerous interviews with plaintiff but refused to allow plaintiff to have counsel present. According to plaintiff, Thom, who was also interviewed numerous times during this period, was allowed counsel.

On June 2, 2008, Wahlstrom and Hale requested a meeting with plaintiff to discuss her discrimination claim. Plaintiff's request to have counsel present was denied "as a matter of company policy." On June 4, 2008, pursuant to an agreement between defendant and plaintiff's counsel, plaintiff agreed to submit a written statement. The following day, defendant told plaintiff to have the statement by the end of that day. Plaintiff could not do so because of her workload. On June 6, 2008, while plaintiff was in New York on business, she was told that the investigation into her charge was closed because she failed to provide a written statement.

Plaintiff's counsel requested written confirmation. Defendant wanted plaintiff to submit to an interview on June 16, despite knowing that plaintiff had been approved to work in New York on that date. Plaintiff then provided a written statement on June 12. After receiving that statement Wahlstrom asked for a meeting.

On June 16, 2008, defendant and two outside attorneys interviewed plaintiff, who was not allowed counsel. The attorneys asked plaintiff whether she had been to the "Martini Ranch" alone with Thom, whether she had physical contact with Thom, and whether she had bragged about a relationship with Thom. On September 23, 2008, defendant promoted another employee, Cheryl Cotterman to director of national accounts. Defendant did not post the position and plaintiff never received notice that the position was available.

## DISCUSSION

Defendant has moved to dismiss all six counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6). A complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim the complaint must describe the claim in sufficient detail to give defendant fair notice of what the claim is and the grounds on which it rests, and the allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-64 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

In Count I, plaintiff asserts a claim for gender based discrimination and a claim for hostile work environment. The Seventh Circuit has stated on numerous occasions that an plaintiff can allege employment discrimination quite generally. See e.g., Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). Even after the Supreme Court's opinion in Bell Atlantic

5

redefined the pleading standard, the Seventh Circuit has maintained that basic position, stating in Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting E.E.O.C .v. Concentra Health Servs., Inc., 496 F.3d 773, 781-82 (7th Cir. 2007)):

> Once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her [sex], there is no further information that is both easy to provide and of clear critical importance to the claim. . . ..

Thus, "to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." Tamayo, 526 F.3d at 1084. In the instant case, plaintiff alleges she is female, she was denied access to meetings needed to perform her job, she was denied a promotion, and she was otherwise treated differently because she is female. Plaintiff also alleges that she was subjected to repeated verbal harassment and accusations about her alleged sexual relations with the company president. These accusations were so extensive as to alter her conditions of employment. These factual allegations are sufficient to provide defendant with sufficient notice to investigate and defend plaintiff's claim. Tamayo, 526 F.3d at 1085. Accordingly, defendant's motion to dismiss Count I is denied.

In Count II, plaintiff alleges that defendant retaliated against her after she complained of discrimination. Once again, defendant has moved to dismiss arguing that plaintiff has failed to allege that she suffered an adverse employment action. The complaint clearly alleges, however, that after she complained of discrimination, she was systematically excluded from meetings, which resulted in an inability to properly perform her job. Additionally, plaintiff has alleged that as a result of her internal charges of discrimination, defendant failed to give her a promotion that it had all but guaranteed her prior to the start of the alleged harassment. These allegations are

6

sufficient to plead that she suffered an adverse employment action as a result of her engaging in protected activity. Hall v. Forest River, Inc., 536 F.3d 615, 619 (7th Cir. 2008).

In Count III plaintiff asserts a claim for defamation based on defendant's statements, made by Tryan and unnamed others, that plaintiff was engaged in a sexual relationship with Thom and Stremleau. Defendant has moved to dismiss arguing that the complaint fails to "set forth the words alleged to be defamatory clearly and with particularity." Lykowski v. Bergman, 299 Ill.App.3d 157, 163 (1st Dist. 1998).

To state a claim for defamation, plaintiff must allege that defendant made a false statement about her, there was an unprivileged publication to a third party by defendant, and that the publication damaged plaintiff. Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 698 (7th Cir. 2006). Illinois recognizes a per se cause of action for defamation when the alleged defamatory statements are so serious that reputational injury may be presumed. Id. Defamation per se includes false accusations of fornication and adultery. Quiroz v. Hartgrove Hosp., 1999 WL 281343 at *14 (N.D. Ill. 1999). Vague, unprovable statements and statements of opinion do not give rise to defamation. Illinois law requires that the allegedly defamatory statement contain an objectively verifiable factual assertion. Ptasznik, 464 F.3d at 698.

In the instant case, plaintiff alleges that Tryan told others that plaintiff was engaged in a sexual relationship with two other employees. These statements are objectively verifiable and if false, defamatory per se. Accordingly, defendant's motion to dismiss Count III is denied.

Count IV alleges a claim for false light invasion of privacy under Illinois law, which has three elements: (1) defendant's action must have caused plaintiff to be placed in a false light before the public; (2) the false light in which plaintiff was placed would be highly offensive to a

7

reasonable person; and (3) defendant must have acted with "actual malice", i.e., with the knowledge that the statements were false or with reckless disregard for whether the statements were true or false. Krieger v. Adler, Kaplan & Begy, 1996 WL 6540 at *10 (N.D. Ill. 1996); Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, 17-18 (1992). "[T]he heart of the tort lies in the publicity. . . ." Lougren v. Citizens First Nat'l. Bank of Princeton, 126 Ill.2d 411, 418 91989). To be actionable, the statement must not merely be published to a third person, as in defamation, but publicized, which is defined as making the matter public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Silk v. City of Chicago, 1997 WL 790598 at *18-19 (N.D. Ill. 1997).

In the instant case, defendant, relying on Silk, argues that plaintiff has not and cannot plead that defendant's statements were publicized outside the workplace. "No case supports the claim that a statement which was made solely within a plaintiff's workplace community is false light invasion of privacy without some proof that the statement was either publicized outside the workplace community to the public at large OR disseminated to such a large audience that the statement would inevitably reach the public at large." Id. (emphasis in original).

Contrary to the statement in Silk, in Illinois a statement need not be published to the public at large if it was published to a "public" with whom plaintiff had a special relationship. Miller v. Motorola, Inc., 202 Ill.App.3d 976, 980-81 (1st Dist. 1990). In Miller, the court adopted the view expressed in Beaumont v. Brown, 401 Mich. 80, 104-05 (1977):

> Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom the individual is not concerned obviously is not a `serious interference' with plaintiff's right to privacy, although it might be `unnecessary' or `unreasonable'. An invasion of a plaintiff's right to

8

> privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public if the person were a public figure, or a particular public such as <u>fellow employees</u>, club members, church members, family or neighbors, if the person were not a public figure. [emphasis added.]

Although <u>Miller</u> involves the tort of public disclosure of private facts, its reasoning was later adopted and applied to allegations of false light. <u>Poulos v. Lutheran Social Services of Illinois</u>, 312 Ill.App.3d 731, 740 (1st Dist. 2000). In the instant case, plaintiff is not a public figure, and disclosure to the public at large would not be near as embarrassing as publication to the people with whom she worked on a daily basis. Accordingly, defendant's motion to dismiss Count IV is denied.

In Count V, plaintiff alleges a claim for intentional infliction of emotional distress ("IED"). The elements of an IED claim in Illinois are: (1) defendant's conduct was extreme and outrageous; (2) defendant intended to inflict severe emotional distress or knew there was a high probability that severe emotional distress would result from the conduct; and (3) the conduct in fact did inflict severe emotional distress on the plaintiff. <u>Lopez v. City of Chicago</u>, 464 F.3d 711, 720 (7th Cir. 2006) (<u>citing</u> <u>McGrath v. Fahey</u>, 126 Ill.2d 78 (1988)).

Plaintiff has alleged that defendant informed her co-workers that she was having sexual relations with two other employees including the president of the company, and that the president was terminated as a result. The statements were made by persons with authority over plaintiff and continued over an extended period of time. If untrue, they could easily cause a woman with ordinary morals and sensibility to perceive them to be sufficiently offensive and sinister to rise to the level of extreme and outrageous behavior. <u>See</u> <u>Pavlik v. Kornhaber</u>, 326 Ill.App.3d 731, 743-44 (1st Dist. 2001). The count puts defendant on notice of plaintiff's claim,

9

the grounds on which it rests, and that a right to relief is plausible. It need do no more. Defendant's motion to dismiss Count V is denied.

Finally, in Count VI, plaintiff alleges that her conditions of employment became so intolerable that she was forced to resign. To establish constructive discharge "a plaintiff must show that unlawful discrimination made [her] working environment so intolerable that a reasonable person would be forced to resign," and that such discrimination was "even more egregious than the high standard for hostile work environment claims. Curry v. Nicholson, 277 Fed. Appx. 628, 631-32 (7th Cir. 2008)(citing Bannon v . University of Chicago, 503 F.3d 623, 632 n.3 (7th Cir. 2007)).

Defendant argues that because plaintiff "fails to state claims for any of her other claims, she cannot come close to clearing the high bar required for constructive discharge." Having concluded if plaintiff has stated claims for all her other claims, the court rejects defendant's argument. Defendant's motion seeks to require plaintiff to plead her proof. This argument is more appropriate for summary judgment. At the pleading stage, however, plaintiff has provided enough factual allegations to raise a right to relief above the speculative level. Accordingly, defendant's motion to dismiss Count VI is denied.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied. Defendant is directed to answer the complaint and the parties are directed ti file a joint status report on the court's form on or before July 30, 2010. This matter is set for a report on status on August 5, 2010 at 9:00 a.m.

**ENTER:** **July 8, 2010**

**Robert W. Gettleman**
**United States District Judge**