IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN MORIARTY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 2777 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| DYSON, INC., an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maureen Moriarty has brought a six count amended complaint against her former employer, defendant Dyson, Inc., alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. (Counts I & II), defamation (Count III), false light invasion of privacy (Count IV), intentional infliction of emotional distress (Count V), and constructive discharge (Count VI). Defendant has moved for summary judgment on all six counts pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendant's motion for summary judgment is granted on all counts.

## BACKGROUND

Plaintiff was defendant's national account manager from August 2006 to November 2008. Defendant is in the business of designing and selling vacuum cleaners. Plaintiff reported to Jennifer Jones ("Jones"), who was vice president of national accounts from August 2007 until Jones' termination in 2008. Plaintiff and Jones were friends before their employment at defendant, and they subsequently had a close working relationship. Plaintiff accompanied defendant's president Gordon Thom, who was president from September 2006 through August 2007 ("Thom"), on business trips. Plaintiff, Jones, and Thom socialized after business hours. At work, plaintiff spoke openly about the time she spent socializing with Thom.

Plaintiff alleges that in late 2007 or early 2008, Jones promised plaintiff a promotion to the Director of National Accounts position. Plaintiff alleges that through its vice president of finance, Maria Tryan ("Tryan"), defendant informed Jones that plaintiff and Thom were engaged in a sexual relationship and that Tryan had repeated this information to defendant's employees. On May 1, 2008, Thom was suspended. The next day, Sarah Wahlstrom, defendant's human resources director, and Jennifer Hale, defendant's general counsel, met with plaintiff to discuss certain expenditures made at a bar during a November 2007 business trip to New York City that she had taken with Thom and retail business strategist Jason Warner. Plaintiff states that during this meeting, defendant insinuated that plaintiff was engaged in an inappropriate sexual relationship with Thom.

Defendant also questioned Warner regarding the same expenditures during that business trip to New York City. On May 6, 2008, Martin McCourt, defendant's CEO, went to plaintiff's desk and requested to talk to her in one of the meeting rooms, the majority of which had glass walls. McCourt asked plaintiff about the same November 2007 business trip expenditures. Plaintiff alleges that McCourt's behavior and questions about her relationship with Thom caused her to become frightened and anxious. McCourt did not question Warner about the business trip. The next day, defendant terminated Thom. Plaintiff alleges that after Thom's termination, defendant told other employees that plaintiff was engaged in sexual affairs with Thom and Tom Stremleau, one of defendant's district managers.

On or about May 30, 2008, plaintiff, through counsel, reported to the company that she had been subjected to gender discrimination and sexual harassment that created a hostile work environment. Defendant had numerous interviews with plaintiff but, as per defendant's normal

2

policy not to allow outside attorneys to participate in internal affairs, plaintiff was not allowed to have her counsel present during those interviews. According to plaintiff, Thom was allowed counsel during his interviews prior to his termination. Plaintiff alleges that as a result of her report, she was systematically excluded from receiving new assignments or projects related to her employment, denied the ability to meet with and/or excluded from meetings with senior executives to discuss matters relating to her accounts, and not permitted to participate in the company's mentoring program.

On June 2, 2008, Wahlstrom told plaintiff that she could submit a written statement in support of her allegations by June 5, 2010. Plaintiff was unable to provide the written statement by the end of the day on June 5 because of her workload. She provided the statement on June 12, 2008. On June 16, 2008, defendant's outside attorneys interviewed plaintiff about her personal knowledge of certain conduct by Thom. About the same time, Jones was interviewed by outside counsel. Jones admitted that she was not being truthful about her statements, and defendant terminated her on June 18, 2008.

In response to plaintiff's May 30, 2008, complaint, Wahlstrom interviewed several employees. Wahlstrom's interviews with Tryan and Jones revealed that Tryan had asked Jones about plaintiff's relationship with Thom for work-related reasons. On June 16, 2008, Wahlstrom interviewed Stremleau, who said that his manager, Patrice Compernolle, had called him at Thom's request when Thom learned that Streamleau and plaintiff were joining employee Forest Priest to visit the same customers within two days of each other in the Austin area. Wahlstrom also individually interviewed Compernolle and Jill Foldenaur, who worked in the Field Sales Department. Foldenaur said that she had been told that Compernolle had called Stremlau and

asked about an affair. After interviewing several other employees, Wahlstrom and Hale met with plaintiff on June 23, 2008, and told her that it would be best to move forward. Plaintiff was not disciplined.

Plaintiff filed a charge of gender discrimination and retaliation with the EEOC on August 13, 2008. On or about September 23, 2008, defendant promoted Cheryl Cotterman to the Director of National Accounts position. Plaintiff alleges that she was never notified of the position and was not given an opportunity to apply.

In May 2008 plaintiff became engaged to a man who was living in New York City. In July or August 2008, plaintiff told defendant that she intended to be in New York by September 1, 2008. In October 2008, plaintiff accepted a job offer in New York City and submitted a written resignation to defendant.

## DISCUSSION

Defendant has moved for summary judgment under Fed. R. Civ. P. 56 on all six counts. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admission file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "This standard is applied with added rigor in employment discrimination cases, where content and credibility are crucial issues." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). The court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant, and any doubts as to whether a genuine factual dispute exists must be resolved in favor of the non-moving party. New Burnham Prarie Homes, Inc. v. Village of Burnham, 910 F.2d 1474, 1477 (7th Cir. 1990). Once the movant has satisfied

4

its initial burden, the nonmoving party then has the burden of offering evidence demonstrating that there is a genuine issue to be tried to the factfinder. Id.

**Count I: Title VII Discrimination and Harassment**

In Count I plaintiff alleges that defendant discriminated against her on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a)(1). Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). To establish a claim for intentional discrimination under Title VII, a plaintiff has two options: she may satisfy her burden through the direct method of proof, or she may demonstrate discriminatory intent indirectly by following the burden-shifting framework. See Adams v. Wal-Mart Stores, Inc. 324 F.3d 935, 938 (7th Cir. 2003). To survive summary judgment under the direct method of proof, a plaintiff must present either direct evidence of discriminatory intent, such as an admission, or enough circumstantial evidence to create a "convincing mosaic" that would allow a rational jury to infer that discriminatory intent motivated the adverse action. Silverman v. Bd. Of Educ. Of City of Chicago, 637 F.3d 729, 733-34 (7th Cir. 2011). Whatever circumstantial evidence a plaintiff presents "must point directly to a discriminatory reason for the employer's action." Adams, 324 F.3d at 939. Because there is no direct evidence of discrimination, plaintiff attempts to establish her claim under the indirect method.

Under the McDonnell Douglas approach, a plaintiff must establish a prima facie case of discrimination by supplying evidence from which a jury could conclude that: (1) "[s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an

adverse employment action; and (4) a similarly situated employee not of the protected class was treated more favorably." McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973); Hughes v. Brown, 20 F.3d 745, 746 (7th Cir. 1994). If the plaintiff meets this burden, the burden of production shifts to defendant to produce evidence of a legitimate, non discriminatory reason for the adverse actions. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S.Ct. 2097 (2000). If the defendant meets that burden, the plaintiff must produce evidence that the employer's proffered reason is a pretext for discrimination. Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002).

Defendant argues that plaintiff's claims fail under the indirect method because she cannot demonstrate that: (1) she suffered an adverse employment action; (2) defendant treated similarly situated males differently; and (3) defendant's legitimate non-discriminatory reasons for its actions are pretextual. An "adverse employment action" is one that is manifested by significantly diminished responsibilities, material loss of benefits, and a less distinguished title, to name a few." Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993). The adverse action "must materially alter the terms and conditions of employment." Stutler v. Ill. Dept. of Corr., 263 F.3d 698, 703 (7th Cir. 2001). This court "does not sit as a super-personnel department that reexamines an entity's business decision." Wolf v. Buss, 77 F.3d 914, 920 (7th Cir. 1996).

The uncontested facts establish that plaintiff was not terminated or demoted. She did not lose any benefits, nor did her supervisors change her job title. Even if her superiors excluded her from meetings concerning her accounts, she offers no evidence that she was excluded because of her sex, and the court finds that no trier of fact could find that this was an adverse employment

action. Plaintiff has not identified any tangible job consequence that would constitute a prima facie case of discrimination. Indeed, even more serious actions such as negative evaluations, written warnings, and unserved three-day suspensions without pay have been found not to be adverse employment actions under Title VII. See Whittaker v. Northern Illinois University, 424 F.3d 640 (7th Cir. 2005). Plaintiff was not fired, demoted, cut in pay, or otherwise had her employment status altered. Because plaintiff has failed to show that she suffered a materially adverse employment action, her Title VII claim cannot survive summary judgment.

Even if plaintiff could establish that she suffered a materially adverse employment action (which she cannot), she cannot satisfy the fourth McDonnell Douglas element. To demonstrate that a "similarly situated employee not of the protected class" was treated more favorably, a plaintiff must show that there is someone who is directly comparable to her in all material respects. Greer v. Board of Educ., 267 F.3d 723, 728 (7th Cir. 2001), Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2008). A court must look at all relevant factors, including whether the employees "dealt with the same supervisor and were subject to the same standards." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000).

Plaintiff has failed to meet her burden for the fourth prong. The only argument that plaintiff proffers which could even remotely be considered under this prong, is her claim that she was treated differently than Warner. Plaintiff's allegations that she was interviewed twice, questioned for a longer time than Warner, and asked about her relationship with other employees is not the sort of conduct that would rise to an actionable level. Warner was a retail business strategist with a different title and job description than plaintiff. Plaintiff has thus failed to

establish that Warner is a "similarly situated employee." Consequently, summary judgment is granted to defendants on plaintiff's claim of gender-based discrimination.

Count I also contains a claim of hostile work environment. An employer "violates Title VII when 'discrimination based on sex…creates a hostile or abusive work environment." Adusumilli v. City of Chi., 164 F.3d 353, 361 (7th Cir. 1998) (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57 (1986)). Put differently, plaintiff must demonstrate that she was harassed because of her sex. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 462 (7th Cir. 2002).

To be actionable, this harassment must be "so severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive work environment." Id. The harassing conduct need not be both severe and pervasive. Cerros v. Steel Tech., Inc. (Cerros II), 398 F.3d 944, 950 (7th Cir. 2005). Conduct that is not particularly severe but is an incessant part of the working environment may, in the end, be pervasive enough to meet the standard for liability. Jackson v. County of Racine, 474 F.3d 493, 499 (7th Cir. 2007). The threshold for plaintiff is high, since "[t]he workplace that is actionable is one that is 'hellish.'" Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997).

In addition, a hostile work environment is one that, viewed from a reasonable person's perspective, would be seen as hostile or abusive and is both objectively and subjectively offensive. Hilt-Dyson, 282 F.3d at 463. In making this determination, a court may consider factors such as the frequency and severity of the conduct, whether it is physically threatening or a mere utterance, and whether it unreasonably interferes with the employee's work responsibilities. Id. An objectively hostile work environment will not be found where the majority of the alleged conduct consists of "derogatory statements made by supervisors or co-

8

workers out of her hearing," and the rest is "isolated and not particularly severe." Mannie v. Potter, 394 F.3d 977, 983 (7th Cir. 2005). Measured by these standards, plaintiff has not met her burden. There are only a few cases in which mere rumors have established a hostile working environment. In Baskerville v. Culligan Int'l Co., 50 F.3d 428, 431 (7th Cir. 1995), the court held that "the occasional vulgar banter, tinged with sexual innuendo, of coarse and boorish workers … would be neither pervasive nor offensive enough to be actionable."

Plaintiff claims that she was subject to a hostile work environment because: (1) defendant's employees repeated rumors spread by Compernolle to other employees and at least one individual other than Dyson, Allison White; (2) Maria Tryan falsely reported to Jones that plaintiff was having a sexual affair with Thom; (3) Tryan repeatedly asked Jones whether she thought plaintiff and Thom were having an affair; and (4) Foldernauer and others told plaintiff that Compernolle was starting rumors. Plaintiff does not cite to any vulgar banter, direct and specific instances of hostility toward her from employees, or otherwise provide any evidence apart from ambiguous claims of gossip. Freedom from "public humiliation" is not a term, condition, or privilege of employment. Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir. 1989). Plaintiff cites no caselaw in which rumors were a foundation for a hostile work environment claim. Gossip about oneself can undoubtedly be embarrassing, and plaintiff obviously felt the workplace atmosphere was uncomfortable. However, viewed objectively, such rumors do not constitute a hostile working environment.

For the foregoing reasons, defendant's motion for summary judgment on Count I is granted.

**Count II: Retaliation**

In Count II plaintiff alleges that she was retaliated against for filing a report with the EEOC. Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). As with a discrimination claim, a plaintiff may establish a prima facie case of retaliation directly or indirectly. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, a plaintiff must offer evidence that she: (1) engaged in a statutorily protected activity; (2) was subjected to an adverse employment action; and (3) a causal connection exists between the two events. Treadwell v. Office of Ill. Sec'y of State, 455 F.3d 778, 781 (7th Cir. 2006). Under the indirect method, a plaintiff must show that: (1) she engaged in protected activity; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who did not engage in protected activity were treated more favorably. See Mattson v. Caterpillar, Inc., 359 F.3d 885, 888 (7th Cir. 2004).

Successfully establishing a prima facie case creates a rebuttable presumption of retaliation and shifts the burden of proof to the defendant to articulate a legitimate, non-retaliatory reason for the adverse actions. Knox v. Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996). If an employer offers a legitimate, non-discriminatory reason for its adverse employment actions, the burden shifts back to the plaintiff to present evidence that the employer's non-discriminatory reason is pretextual. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir.

1998). A failure to promote may constitute an adverse employment action. Bell v. E.P.A., 232 F.3d 546, 555 (7th Cir. 2000).

Plaintiff has presented evidence that she engaged in statutorily protected activity by filing discrimination charges with the EEOC and claims that defendant failed to promote her. Plaintiff testified that Thom told her he was "working on" creating a director of sales for national accounts position for her. Jones then informed plaintiff that this position was taken off the table because of budgetary reasons. Thom and Jones were both terminated. Daish eventually created a new position and hired Cheryl Cotterman. Plaintiff was never promised a promotion, and there is no evidence to show that Daish was aware of any conversation between Jones and plaintiff about a promotion.

Plaintiff alleges a litany of other retaliatory actions: (1) defendant's alleged exclusion of plaintiff from projects and meetings; (2) defendant's alleged threat to terminate plaintiff for requesting counsel to attend a meeting; (3) defendant's alleged request to provide additional information regarding her claims; (4) defendant's alleged statement to plaintiff that the Wahlstrom investigation was closed; (5) defendant's alleged denial of plaintiff's request to work outside the office; (6) defendant's alleged fabrication of claims against plaintiff; and (7) defendant's failure to approve routine articles for defendant's customers.

Plaintiff's claim fails under the direct method because she has shown no causal link between her exclusion from projects and meetings and her report of discrimination. Defendant eventually approved plaintiff's articles. The impediments to plaintiff's retaliation claim under the indirect method are the same as they were for the discrimination claim. She has failed to show that other similarly-situated employees who did not engage in protected activity were treated

11

more favorably. Defendant has proffered legitimate, non-discriminatory reasons for each of plaintiff's claims, and plaintiff has not offered any evidence to show that those reasons were pretexual. Consequently, plaintiff has not met her burden under the indirect method for avoiding summary judgment for Title VII retaliation. Accordingly, defendant's motion for summary judgment as to the Title VII retaliation claim is granted.

**Count III: Defamation**

In Count III, plaintiff claims that she incurred damage to her reputation because defendant spread rumors about her relationship with Thom. A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with her. Bryson v. News America Publications, Inc., 174 Ill.2d 77, 87 (1996). Statements may be considered defamatory *per se* or *per quod*. See id. Statements that fall within the defamatory *per se* category are thought to be so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed. Owen v. Carr, 113 Ill.2d 273, 277 (1986). To be considered defamatory per se, the words must: "(1) impute the commission of a criminal offense; (2) impute infection with a loathsome disease; (3) impute inability to perform or want of integrity in the discharge of duties of office or employment; or (4) prejudice a party, or impute lack of ability, in his trade, profession or business." Beasley v. St. Mary's Hospital, 200 Ill.App.3d 1024 (1990). The Illinois Slander and Libel Act (750 ILCS 145) has enlarged the classifications to include false accusations of fornication and adultery as actionable as a matter of law. Bryson, 174 Ill.2d at 89.

Even if a statement is considered defamatory, it is not actionable if it is reasonably capable of an innocent construction. Id. at 90. Under the innocent construction rule, the

statements are considered in context and the words and their implications are given their natural and obvious meaning. Id. Further, a statement is conditionally privileged if a defendant makes the statement: (1) in good faith; (2) with an interest or duty to be upheld; (3) limited in scope to that purpose; (4) on a proper occasion; and (5) published in a proper manner and only to proper parties. Larson v. Decatur Memorial Hosp., 236 Ill.App.3d 796, 176 Ill.Dec. 918 (1992).

In Illinois, whether a qualified privilege exists is a question of law for the court. Kuwik v. Starmark Star Marketing and Admin., Inc., 156 Ill.2d 16, 25 (1993). In determining "whether a defendant acted in good faith as a matter of law for the conditional privilege to exist, a court may consider the face of the report, the occasion on which it was written, conduct of the defendant in connection with the report, and the relationship between the publishers and the recipients." Id.

In the instant case, defendant contends that Tryan's inquiry to Jones about plaintiff and Thom was a legitimate, work-related inquiry. Tryan did not use any foul or disparaging language, and did not specifically ask whether plaintiff was "sleeping" with Thom. McCourt's statement to Jones that he regarded plaintiff to be a "liar" is also conditionally privileged since it related to his investigation and because the comment was made only to Jones in furtherance of the investigation.

Plaintiff alleges that Compernolle spread rumors that plaintiff was engaged in a sexual affair with Stremleau, and that as a result of those statements defendant's employees told her that they could not understand how plaintiff could come to work after getting Thom fired for their affair. The record shows that defendant's employees heard of rumors of an affair between plaintiff and Thom, and it is undisputed that defendant was aware of the workplace atmosphere and had to address the rumors flowing around the office. Defendant, however, informed

13

employees to stop gossiping and "get back to work." There is no evidence that defendant acted improperly during the investigation. Defendant cannot be held responsible for rumors circulating among its employees that is neither initiated nor condoned. Therefore, defendant's motion for summary judgment is granted with respect to plaintiff's defamation claim.

**Count IV: Invasion of Privacy/False Light**

Count IV alleges a claim for false light invasion of privacy. The necessary elements of this claim under Illinois law is set out in the Restatement (Second) of Torts, § 625E (1977):

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if: (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Lovgren v. Citizens First National Bank, 126 Ill.2d 411, 418 (1989).

Plaintiff alleges that defendant placed her in a false light when McCourt walked her through the office to a conference room with windows in order to conduct his investigation. She also claims that after the meeting the rumors about her and Thom's relationship spread rapidly around the office. The purpose of the false light cause of action is to "protect an area in which every citizen must be left alone." Id. at 420; Kolegas v. Heftel Broadcasting Corp., 607 N.E.2d 201, 210 (Ill.1992). Unlike the publication element required in defamation cases, however, the publicity required for invasion of privacy must be so widespread to the public that the information can be considered of general knowledge. Roehrborn v. Lambert, 277 Ill.App.3d 181, 184 (1995); Restatement (Second) of Torts, § 652D, comment a, at 384 (1977).

The publicity forming the basis for a false light invasion of privacy claim must be reasonably capable of being understood as singling out the plaintiff. Aroonsakul v. Shannon, 279

14

Ill.App.3d 345, 350 (2nd Dist.1996). The inquiry is whether defendant's conduct can be construed as highly offensive, not whether it can reasonably be construed as innocent. Zechman v. Merril Lynch, Pierce, Fenner & Smith, Inc., 742 F.Supp. 1359, 1373 (1990).

In this instant case, given the circumstances of the pending investigation about the New York City business trip, McCourt had no other choice but to meet with plaintiff. McCourt and plaintiff walked down the hall to the conference room to have a meeting. No reasonable jury could conclude that the simple act of walking down the hall to the conference room put plaintiff in a false light. Therefore, the court grants summary judgment to the defendant on Count IV.

**Count V: Intentional Infliction of Emotional Distress**

In Count V, plaintiff alleges a claim of intentional infliction of emotional distress. Her claim is predicated on the same factual allegations that are made in Counts I through Count IV. To state a claim for intentional infliction of emotional distress, plaintiff must show that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant knew there was a high probability that its conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. McGrath v. Fahey, 126 Ill.2d 78 (1988). The law applies only "where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts § 46, comment *j*, at 77-78 (1965). The outrageousness of the conduct must be determined in light of all the facts and circumstances in a particular case. McGrath, 126 Ill.2d at 90. Plaintiff's complaint alleges that she suffered severe emotional distress as a result of defendant spreading rumors about her. Courts are hesitant to find that a plaintiff has established a claim for intentional infliction of emotional distress in the employment

15

setting, Lundy v. City of Calumet City, 209 Ill.App.3d 790, 793-794 (1991), reflecting an attitude that day-to-day stressors in the workplace should not give rise to this cause of action. Miller v. Equitable Life Assurance Society, 181 Ill.App.3d 954, 957-58 (1989).

To determine whether defendant's conduct can be characterized as extreme and outrageous, the facts must be judged by an objective standard. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). The factors to be considered include: the power and influence of the defendant; the likelihood that the threatened action could be carried out; the defendant's awareness of the plaintiff's susceptibility to emotional stress; and the legitimate reasons one might have for making the offensive statement. Lopacich v. Falk, 5 F.3d 210, 212 (7th Cir. 1993).

Plaintiff was allegedly threatened with termination once if she did not comply with defendant's investigation into her complaints. Plaintiff also claims to have suffered emotional distress as a result of defendant's false statements and reckless conduct. However, the actions that plaintiff recites for most of her counts are insufficient to support a claim for intentional infliction of emotional distress. She did not seek any medical or psychiatric treatment. She does not allege any particular susceptibility to emotional distress and offers no evidence that she in fact suffered severe emotional distress.

Although there is no bright-line test for gauging the severity of emotional distress, Illinois courts have traditionally placed a high threshold for the level of distress that a plaintiff must show in order to succeed on this claim. In the instant case, defendant takes special note of the fact that plaintiff did not seek psychological or medial treatment for emotional distress. While seeking medical treatment is not a required element, it is indicative of the general level of

emotional distress plaintiff might have suffered. Plaintiff continued working at defendant until her resignation and move to New York to get married, negating any notion that she actually suffered from severe emotional distress as a result of defendant's conduct. The court finds that the alleged conduct of defendant, if indeed it made statements about plaintiff and Thom to some of its employees, is not so outrageous or extreme in character as to warrant a claim of intentional infliction of emotional distress. Consequently, the court grants summary judgment for defendant on the plaintiff's intentional infliction of emotional distress claim in Count V.

**Count VI: Constructive Discharge**

The doctrine of constructive discharge that allows a plaintiff to resign and bring suit against her employer as if she had been fired. Title VII extends to "discriminatory intimidation, ridicule, and insult" in the workplace. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399 (1986). To succeed on a constructive discharge claim, plaintiff must show that her working conditions were so intolerable that a reasonable person would have been compelled to resign. Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005 (7th Cir. 1994). Defendant must have deliberately made her working conditions so demeaning that she was effectively fired. Monaco v. Fuddruckers, Inc., 1 F.3d 658, 661, n. 4 (7th Cir. 1993). The conditions must be intolerable because of unlawful discrimination. Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir. 1998). The standard for constructive discharge is high.

In the instant case, there is no evidence of constructive discharge. However, this is not to say that plaintiff failed to make her concerns known to defendants. She filed her discrimination complaint and notified defendant, which investigated the matter. But unless the plaintiff's

17

working conditions are beyond "ordinary" discrimination, an employee is expected to remain on the job while seeking redress. Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996).

It appears that plaintiff did just that, remaining in her position for five months after first complaining of discrimination before she relocated to New York to get married. Plaintiff has not established that her working conditions were so intolerable that she had no choice but to quit her job. It is undisputed that there was gossip at the company, such as occurs in many workplace settings, but the conduct does not rise to an actionable level, nor did it justify her resignation. Her evidence of an intolerable work environment is vague at best. Plaintiff has produced insufficient evidence to show that she was constructively discharged because of office rumors and her gender. Therefore, this court grants summary judgment in favor of defendant on plaintiff's constructive discharge claim in Count VI.

## **CONCLUSION**

For the reasons stated herein, defendant's motion for summary judgment on Count I through VI is granted.


**ENTER:** October 30, 2012

_____
   **Robert W. Gettleman**
   **United States District Judge**